## Bales v. Holt, County School Superintendent, et al.

(Decided Oct. 22, 1937.)

LAWRENCE S. HAIL for appellant.

B. J. BETHURUM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

On April 2, 1937, the county board of education of Pulaski county, Ky., passed a resolution proposing the issuing of $33,000 of bonds against the future revenues of the board; the proceeds from which to be devoted to the payment of floating indebtedness incurred by the board during the previous school year (i. e., 1935-1936) plus like accumulated indebtedness for the current school year of 1936-1937. About $17,000 of the amount proposed to be funded represented a judgment against the county board of education for which it became liable in the manner pointed out in the case of Board of Education of Pulaski County v. Nelson, 268 Ky. 83, 103 S. W. (2d) 691. It will be seen from a reading of that opinion that the debt for which that judgment was rendered was originally created by the Eubank Independent Common

School District of Pulaski county, and which it owed at the time it was discontinued and was merged in the county board of education and thereby became a part of it. The opinion in that case points out the procedural statutes whereby such merging was brought about. We therein held that under the statutes providing for such a merger the county board of education became liable for the valid indebtedness of the small district that the merger took in. The balance of the proposed bond issue, amounting to $16,000 in round numbers, represents, as averred in the pleadings, current floating indebtedness incurred by the county school district for and during the first completed scholastic year (1935-1936), together with accumulations for the following school year (1936-1937) up to the time the resolution was passed.

This action was filed in the Pulaski circuit court by appellant and plaintiff below, A. L. Bales, claiming to be a citizen and taxpayer of the county and of its county school district, against the county school superintendent, the county board, and its members to enjoin the issuing of the proposed funding bonds, upon the ground that the debts proposed to be funded exceeded the legally anticipated revenue for each of the years involved, and it was, therefore, invalid under numerous opinions of this court; but no figures are set out in the petition, except the statement that "the budget of the defendant board for the fiscal years of 1936 and 1937 evidences anticipated income according to the said Board of Three Hundred and Seven Thousand Two Hundred and Twenty Four ($307,224.00) Dollars." The pleader then attempts (but ineffectually) to state the amount of the expenditures of the board for each of the years mentioned up to the time of the filing of the action, and then concludes by saying that "if the said refunding bonds are sold they will represent a debt of the defendant Board and of Pulaski County School District that is $—— in excess of the income and revenue provided for the aforesaid School Fiscal year of 1936-1937," and which he alleges is illegal and invalid, although the above and other blanks in his pleading renders it deficient in pointing out that fact. However, later pleadings of defendants, to some extent at least, supplied such deficiencies.

The action was brought pursuant to the provisions of section 186c-6 to and including 186c-8 of Baldwin's

1936 Revision of Carroll's Kentucky Statutes, to obtain the approval of the court for the proposed issue. Only two witnesses testified in the case, and they were the defendant Holt, county superintendent of Pulaski county, and J. W. Lee, an accountant residing in the city of Middlesboro, Ky., and who was a member of a firm engaged in that business. The answer of the defendants averred (and the truth of which was admitted) that the county board, in the exercise of the same right invoked in this action, in 1929 issued its funding bonds to the amount of $25,000 to take care of like floating indebtedness, and that pursuant to a similar resolution passed in the early part of 1936 it again sought and obtained the same relief by issuing additional funding bonds for an alleged accumulation of $35,000 of similar floating indebtedness and which represented excess accumulations of expenditures due to alleged defalcations in payment and collection of anticipated revenue since and following the issuance of the prior $25,000 amount of bonds in 1929. So that, if the issue of the present proposed bonds is approved, as was done by the trial court, there will be $93,000 of outstanding bonds representing that amount of deficiencies in estimated collections of the district revenues over a period of only about seven years, or slightly more than $13,285 per year, but from which should be deducted indebtedness incurred prior to the beginning of that period, and embraced in the first issue of $25,000, and there should also be deducted from that sum the amount of the judgment, supra, against the county board of education which became final 30 days after March 26, 1937, when we rendered our opinion reported, supra.

There can be no doubt under our previous opinions that the county board has the right to issue funding bonds to take care of the judgment, supra, against it, since it is a debt which the board did not voluntarily incur; it being thrust upon it by law, and, therefore, not the character of indebtedness referred to in section 157 of our Constitution, and which interpretation we have also made in numerous prior cases. See Nelson Case, supra.

But the right of the board to issue its funding bonds for the remainder of the amount proposed is by no means satisfactorily shown. The superintendent in giving his testimony failed to enlighten the court on material and crucial facts upon which the right to issue such

bonds is exclusively based. His testimony mainly consists in giving his conclusions as to whether the items composing the amount of the issue (excluding the judgment, supra) were validly contracted; he testifying generally in response to equally general questions that they were. He was asked to give an explanation "as to why the funding bonds asked for in the resolutions referred to should be issued?" His answer was: "Because of the need of money to carry on the school government of the County that we have not been able to collect on account of the depreciation of the value of property and the failure of the Sheriff to collect all the anticipated revenue." He was then asked whether or not there had been any additional school buildings constructed in the county since the issuing of the funding bonds of 1936, and his answer was: "The furniture and equipment was replaced for furniture burned previously in four school buildings." Nowhere in any of the testimony was the amount of such destroyed furniture or its description stated, and it is only by inference that it was even needed. The superintendent did testify, however, as did also the accountant, the witness Lee, that none of the proposed indebtedness for the approval of which this action was brought embraced any of the items for which prior issues of funding bonds were made, and that they all accrued since the 1936 issue.

The witness Lee, in giving his testimony, attempted to show the amount of the budget, for at least one of the years here involved, that the county board of education submitted to the state board of education, and to point out the shortage that accrued on that, as well as his reason therefor, and which reason consisted of a failure of the state board of education to pro rate the state school funds at $12 per pupil as anticipated, but only furnished a pupil pro rata of some amount less than $12. But whether that source of deficit prevailed for both of the years here involved, or for only one of them, is not made clear. The same witness points out that there was likewise a failure of the sheriff to collect the county levies for school purposes (which he says was 75 cents, the maximum limit, but he introduces no records to that effect, nor does anyone prove any demand by the county board of education of the fiscal court to make any levy) to an amount equal to the anticipated revenue from that source. Also, it appears that the anticipated revenue to be so derived was the full amount of all assessments for

ad valorem and poll taxes without any deduction whatever for failures in collections, but which experience has taught will inevitably result. In other words, the county board attempted to expend 100 per cent. of the levy, when all of our prior opinions, having occasion to mention or deal with the subject, declare that the anticipated amount that such fiscal authorities may expend before collection is only the sum that a reasonable anticipation would produce.

In view of the universally known fact that there are always deficiencies in the collection of taxes, and that there is never a 100 per cent. collection, the board in this case, in anticipating the revenues as a basis for its expenditures during the period proposed to be covvered by the proposed issue, did not have due regard for the finances of the county school district during the time that the indebtedness proposed to be funded was created, as is expressly required by section 186c-7 of our present Statutes should be done, and which requirement is contained in this excerpt therefrom: ''And if it shall appear in such suit or action that the county, city or municipality or taxing district, that the officials in office at the time of the creation of such indebtedness have not had due regard for the finances of the county, city, municipality or other taxing district, during the time in which said indebtedness was created, then the court shall not have the right and power to approve such bond issue.''

Moreover, it is admitted in the record that at the time of the proposed issue in this case the sheriff of Pulaski county had not finished collecting the taxes for the current year, which composes a part of one of the scholastic years in which the debts proposed to be funded were created. That officer yet has an unexpired time within which to finish his collection, and it may be that he might do so up to 100 per cent. of the levy, or that he will collect a greater amount than the board anticipated he would when it passed its resolution, supra.

A more detailed consideration of the disclosures of the record, as well as its failures in that respect, would confirm the conclusions we have reached; but in view of the foregoing we have deemed it unnecessary to make them. Overexpenditures of anticipated revenue whereby debts are created and funding bonds later issued have become so frequent and numerous as to demonstrate

that the excess debts were not the result of casual deficits, nor was their creation in any sense accidental or impossible of anticipation, if frugal management was employed.

While not a determinative fact, nor possibly a material one, yet we cannot escape the conclusion of recklessness in the handling of Pulaski county school finances, and which is evidenced by the frequent funding bond issues to which we have referred. Such repeated and frequent calls for help, with the large amounts presented, strongly emphasizes the fact of a disregard of the mandates of the statute and to justify the withholding of benefits of liberality of construction of any of its requirements. That conclusion is further fortified by the fact that within short successive periods the board has felt it incumbent to have its accounts audited by a professional outsider at considerable expense, since it appears that in 1936 in the action to approve the funding issue of that year the same witness, Lee, testified and gave what he interpreted to be the then condition of the accounts of the county school district, the records of which he had theretofore audited pursuant to contract. Surely the books could be kept, if carefulness was observed, in such a manner as to prevent the incurring of such items of expense. The matters to which we have referred conclusively demonstrate, to our minds, that the showing here made is not sufficient to authorize the court to approve the proposed bond issue in any amount over and above that represented by the judgment against the county school district and which we approved in the Nelson Case, supra.

Wherefore, the judgment is affirmed to the extent that it approved the issuing of the county school district's bonds to obtain funds with which to discharge the judgment referred to, and all accumulated interest thereon, but in so far as it approved the issue of the remaining portion of the bonds proposed, it is reversed, with directions to modify it in conformity herewith.